Filed 9/17/20  P. v. Balch CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW ROY BALCH,<br><br>        Defendant and Appellant. | D075988<br><br><br>(Super. Ct. No. SCN386107) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed in part.  Reversed in part.

Sheila Quinlan, by appointment of the Court of Appeal, for Appellant and Defendant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorneys General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Respondent and Plaintiff.

Following convictions on eight counts of lewd and lascivious behavior (Pen. Code,[1] § 288, subd. (a)) and two counts of oral copulation and sexual penetration with two children, aged four and six (§§ 288.7, subd. (b) & 289), defendant Matthew Roy Balch was sentenced to 400 years to life plus 40 years and directed to pay a $5,000 restitution fine and various other fines, fees, and assessments.  He appeals, raising three contentions.  First, he challenges the sufficiency of the evidence regarding count 4, a conviction for lewd and lascivious behavior in violation of section 288, subdivision (a) based on the child touching defendant's penis.  Second, he contends that admission of evidence of a prior sexual offense conviction and its use as propensity evidence as permitted by Evidence Code, section 1108, and the court's use of the corollary jury instruction, CALCRIM No. 1191 violated his right to due process.  Third, he maintains that the imposed fines, fees, and assessments, to which he did not object at sentencing, violated his due process rights because he did not receive an ability-to-pay hearing.  We conclude the admission of evidence under Evidence Code, section 1108 and the use of CALCRIM No. 1191 were proper, and Balch forfeited a challenge to the fines, fees, and assessments by failing to object to their imposition at sentencing, and we will affirm.  However, we agree the record lacks substantial evidence to support a conviction on count 4 and will reverse that conviction.

I

BACKGROUND AND PROCEDURAL FACTS

In 2017, S.T. moved to California with her two sons, six-year-old A.A. and four-year-old Z.A.  The family became homeless and lived primarily in their car.  S.T. became friends with Balch, who was also living in his vehicle at the time.  Balch spent time with A.A. and Z.A., playing tag, reading to

---

[1]     Further unspecified statutory references are to the Penal Code.

2

them, playing video games, and even buying them toys. Sometimes S.T. left the boys in the van or a motel room with Balch for a few hours while she did laundry or worked.

Balch traveled out of state for a short period of time and returned with a van instead of a car. Eventually, S.T. sold her car, and she and the boys began staying with Balch in his van.

S.T. had some concerns about her boys' safety around Balch; she noticed Z.A. sat on Balch's lap while playing video games, and Balch would rub the boys' legs. She testified it was "weird" how close he became with the boys. She had also noticed that sometimes when she returned to the van, Balch would jump out of it, adjusting his pants, and she had concerns about him.

A month or two after S.T. had been staying in Balch's van, a mutual acquaintance informed her that Balch was a sex offender. When S.T. confronted Balch, he admitted he was a registered sex offender, but he denied anything had occurred with the boys.

S.T. asked A.A. and Z.A. if anyone had touched them inappropriately, and Z.A. said Balch had. Z.A. described several of the interactions in detail. A.A. initially denied anything had happened; he later told S.T. something had happened, but he did not want to talk about it.

S.T. talked to Kevin, a mandatory reporter who knew Balch, S.T., and the boys. Kevin reported the information to police. Police contacted S.T.'s family, and A.A. and Z.A. each participated in video-recorded forensic interviews.

Balch was charged with 10 counts. Counts 1 and 2 were for lewd and lascivious acts upon and with the body and any part and member of Z.A., a child under age 14. (§ 288, subd. (a)). Counts 3 through 7 and count 9 were

3

for lewd and lascivious acts upon and with the body and any part and member of A.A., a child under age 14.  (§ 288, subd. (a)).  Attached to each of these counts were allegations that Balch had been convicted previously of child molestation in Indiana, an offense equal to violating section 288, subdivision (a) (§ 667.61, subds. (a), (c), & (d)), and that Balch had been convicted in the present case of committing an offense specified in section 667.61, subdivision (c) against more than one victim (§ 667.61, subd. (j)(2)).  Balch was charged in counts 8 and 10 with oral copulation and sexual penetration with a child who was 10 years of age or younger.  (§§ 288.7, subd. (b) & 289.)

Because the substantive challenge here regards only count 4, we limit the factual discussion to information related to that count.  Count 4 specified that on or between May 1, 2017 and April 3, 2018, Balch willfully and lewdly committed a lewd and lascivious act, "to wit:  [A.A.] touched Defendant's penis with his hand. . . ."

During his forensic interview, after initially revealing through whispered verbal responses and written answers that Balch did "sex things," A.A. focused on the video camera and asked who would see the video—and whether it could find its way into the movies.  The interviewer told A.A. the video would not be used in a movie.  Then A.A. answered some of the interviewer's questions.  He said Balch wanted him to touch Balch's penis, but A.A. did not want to.

The jury watched the video of this interview and received a copy of the transcript, which it had during deliberations.  About 27 minutes and 10 seconds into the video, the following exchange occurred:

4

"**Interviewer**: Did you say something to [defendant]?
Hmm?

"**A.A.**:      (Unintelligible.)  Then I was (unintelligible),
and then I was (unintelligible) say, 'Can I stop
now?' He said, you-he was still- let me- um, get
a- get a- let him- me to touch his privates. I did
not want it.

"**Interviewer**:  Well, what did he want you to do?

"**A.A.**:      (*whispering*) Touch his privates.

"**Interviewer**:  Oh, how do you know he wanted you to
touch his privates?

"**A.A.**:      I don't know.

"**Interviewer**:  So he wanted you to touch his privates.
And so what happened?  [A.A.], which
private did he want you to touch?

"**A.A.**:    The same- the same thing as mine.

"**Interviewer**: Oh. And so he wanted you to do that.  And
did that happen?  Hmm? What?

"**A.A.**:      And then I wanted- I- I don't know my mom's
phone number.  So I had to go to the bathroom
and lock it up."

Not evident from the transcript was A.A.'s physical responses to the questions.  After the interviewer asked A.A. "And did that happen?" A.A. shook his head "no" multiple times.  When the interviewer said, "Hmm?" A.A. continued to shake his head no, and when she said, "What?" A.A. still shook his head no.

At trial A.A. repeatedly said he did not want to talk about the time he spent living with Balch.  When asked if someone touched his body where they should not have, A.A. answered, "It was [Balch]."  When the prosecutor

5

asked, "Did [Balch] ever have you touch him anywhere that he wasn't supposed to?" A.A. answered, "[Balch] did it." A.A. drew pictures and marked on images to indicate the places on his body where Balch had touched him and the parts of Balch's body that Balch had used to touch A.A.

The defense offered expert testimony that children's memory can be influenced by questions directed at them, a phenomenon known as suggestibility.

The jury returned guilty verdicts on all 10 counts and their corresponding allegations. The court sentenced Balch to eight consecutive 50 years to life indeterminate terms for counts 1 through 7 and 9, for a total of 400 years to life. It imposed and stayed two terms of 30 years to life on counts 8 and 10, pursuant to section 654. It imposed five-year terms for the serious felony prior on counts 1 through 7 and 9, for a total determinate term of 40 years. It also imposed a $5,000 restitution fine (Pen. Code, § 1202.4), a $400 court security fee (Pen. Code, § 1465.8), a $300 criminal conviction assessment (Gov. Code, § 70373), a $154 criminal justice fee (Gov. Code, § 29550), and a $500 sex offender registration fee (Pen. Code, § 290.3). Balch did not object to these fines, fees, and assessments.

Defendant timely appealed.

## II

## DISCUSSION

### A. *There is Not Substantial Evidence to Support Count 4*

Balch maintains there was insufficient evidence to justify a conviction on count 4, for violating section 288, subdivision (a), by causing A.A. to touch Balch's penis. We will affirm a judgment supported by substantial evidence. (See *People v. Johnson* (1980) 26 Cal.3d 557, 576.) In reviewing a challenge to the sufficiency of the evidence, "we review the whole record in the light

6

most favorable to the judgment below to determine whether it discloses substantial evidence—that is evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) If there is substantial evidence to support the verdict, we give deference to the trier of fact rather than substitute our own judgment. (*Ibid*.; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

A violation of section 288, subdivision (a) requires an offender to "willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." This statute "prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act." (*People v. Martinez* (1995) 11 Cal.4th 434, 444.) In this case, the charging document indicated count 4 was based on Balch touching his penis to A.A.'s hand. However, there is no evidence that occurred.

The only time A.A. discussed touching Balch was during the forensic interview, when he whispered to the interviewer that Balch wanted him to touch Balch's "privates." Immediately after A.A. revealed that Balch wanted him to touch "the same things as mine," the interviewer asked, "And did that happen?" A.A. shook his head no, but he said nothing aloud. To elicit a verbal response, the interviewer asked, "Hmm?" Again, A.A. shook his head no. When the interviewer asked, "What?" A.A. still did not speak; he shook his head no. It would not be reasonable to infer that A.A. shaking his head could have indicated he actually touched Balch, as suggested by the Attorney

7

General; his nonverbal answer to her question about whether A.A. touched Balch was "no." A reasonable jury could not interpret this response to mean A.A. complied with Balch's request. This was the only evidence proffered in support of count 4.

We are not convinced by the Attorney General that A.A.'s gesture indicated he simply wanted to stop talking because that is inconsistent with A.A.'s behavior. A.A. verbalized his reluctance to answer questions, both during the forensic interview and at trial. For example, during the forensic interview, he expressed reluctance to talk about Balch when he repeatedly asked who would see the recorded interview and whether it could make its way into the movies. And at trial, he told the court repeatedly that he did not want to talk about the time he spent with Balch.

We are also not persuaded that A.A.'s use of the word "wanted" to sometimes indicate an event that actually occurred means that he touched Balch just because he told the interviewer that was what Balch wanted. Indeed, his physical response to the questions—shaking his head no—directly contradicts that analysis. (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851 [reasonable inference must be drawn from evidence].) It likewise is not reasonable to infer A.A.'s clear non-verbal denial that he touched Balch was simply evidence of shame because he had in fact touched Balch. (See *ibid.*) In the absence of any evidence from which such an inferential explanation could be drawn, we cannot conclude there was substantial evidence to support the conviction.

B. *Evidence Admitted Under Section 1108 and Use of CALCRIM No. 1191 Did Not Violate Defendant's Due Process Rights*

At trial, the court permitted a 26-year-old witness from Indiana to testify that when she was nine years old in 2001, Balch placed his hands down her pants and touched her vagina under her clothes. The court also

8

admitted the parties' stipulation that Balch pled guilty and was sentenced in 2001 for molesting the witness.

Defendant argues this evidence, admitted pursuant to Evidence Code section 1108, violated his due process rights, contending that the statute permits jurors to consider a defendant's prior sex offenses to corroborate guilt of the instant offense. He further contends the use of CALCRIM No. 1191 instructing jurors on how to consider the evidence for a defendant's propensity to commit sexual offenses likewise violates his constitutional rights. Balch makes these arguments to preserve them for federal review, recognizing that we are bound to follow the decisions of the Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), which has determined that a due process challenge to Evidence Code, section 1108 and the corresponding jury instruction is without merit. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1011-1012 (*Reliford*) [jury instruction]; *People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*) [Evid. Code, § 1108].)

When a defendant is accused of a sex offense in the instant case, Evidence Code section 1108 permits a jury to consider evidence that a defendant committed another sexual offense.[2] The Supreme Court has explained that "in light of the substantial protections afforded to defendants in all cases to which [Evidence Code] section 1108 applies, [there is] no undue unfairness in its limited exception to the historical rule against [the use of] propensity evidence." (*Falsetta*, *supra*, 21 Cal.4th at p. 915; see *People v. Manning* (2008) 165 Cal.App.4th 870, 878.)

CALCRIM No. 1191 allows the jury to consider evidence of another sexual offense to infer a disposition to commit the same or similar sexual

---

[2] Evidence Code section 1108 limits its use based on its probative value as compared to prejudice under section 352.

offenses in the instant case.  The California Supreme Court rejected a due process challenge to CALJIC No. 2.50.01, the predecessor instruction, in *Reliford*.  There the Supreme Court held that evidence of another sexual offense is relevant to the issue of propensity to commit that type of offense. (*Reliford*, *supra*, 29 Cal.4th at p. 1012.)  It concluded that any prejudice could be weighed against its relevance under Evidence Code section 352.  And it explained that jurors could not use the prior offense alone to convict a defendant of the charged crime, and based on the instructions as a whole no reasonable juror would believe he or she could.  (*Reliford*, at pp. 1013-1014.) Because CALCRIM No. 1191 is indistinguishable from CALJIC No. 2.50.01 (*People v. Johnson* (2008) 164 Cal.App.4th 731, 739-740 [Third District]; *People v. Wilson* (2008) 166 Cal.App.4th 1034, 1048-1049 [Sixth District]), the use of CALCRIM No. 1191 likewise does not violate a defendant's due process rights.

C.  *Challenge to Fines, Fees, and Assessments Was Forfeited*

Balch recognizes that he did not request a hearing on his ability to pay. He notes that it was evident at the time of sentencing that he was transient during the events of the case and had no source of income at the time.[3] Despite this information, though, the court imposed a $5,000 restitution fine. The court commented that based on defendant's age and his ability to work in prison, he would be able to make restitution payments.

Balch's failure to object to the restitution fine forfeits the issue for appeal.  (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1032-1033 (*Gutierrez*).)  The statute authorizing the restitution fine authorized the court to consider defendant's ability to pay and assigned defendant "the burden of demonstrating his . . . inability to pay."  (§ 1202.4, subds. (c), (d).)  By

---

[3]     The record indicates that Balch had a job with FedEx.

imposing a restitution fine of $5,000 under section 1202.4, subdivision (b), the trial court exceeded the $300 minimum fine, thereby authorizing the court to consider defendant's ability to pay. (§ 1202.4, subd. (c).) Additionally, a trial court has authority under the due process clause to determine whether defendant has the ability to pay nonpunitive fees and assessments and to impose, reduce, or strike such amounts as may be appropriate. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 96, rev. granted, Nov. 13, 2019, S257844.)

Balch's silence in the face of the $5,000 fine he could have challenged on the basis of his alleged inability to pay "is a classic example of the application of the forfeiture doctrine relied upon by the California Supreme Court in numerous criminal sentencing cases decided well before [*People v.*] *Dueñas* [(2019) 30 Cal.App.5th 1157]." (*Gutierrez, supra*, 35 Cal.App.5th at p. 1033; see *People v. Nelson* (2011) 51 Cal.4th 198, 227 [applying forfeiture to unpreserved ability-to-pay challenge to restitution fine].) Because defendant failed to object at sentencing to the $5,000 restitution fine on ability-to-pay grounds, he has forfeited the issue on appeal as to the remaining $1,354 in

challenged assessments.[4] (See *Gutierrez*, at p. 1033 ["As a practical matter, if [the defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees."].)

Balch next argues that forfeiture here would constitute ineffective assistance of counsel. To demonstrate ineffective assistance of counsel, Balch must show his attorney's performance (1) fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*).) A defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id*. at p. 694.) We evaluate counsel's conduct with deference and "indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance." (*People v. Dennis* (1998) 17 Cal.4th 468, 541

---

4    Though we conclude Balch has forfeited this argument, we note that with respect to the restitution and sex offender registration fines, which we included in the $1,354, "there is no due process requirement that the court hold an ability to pay hearing before imposing a punitive fine and only impose the fine if it determines the defendant can afford to pay it." (*Kopp*, *supra*, 38 Cal.App.5th at pp. 96-97, rev. granted; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, rev. granted, Nov. 26, 2019, S258946.) Because the restitution and sex offender registration fines are intended to punish a defendant (see *People v. Hanson* (2000) 23 Cal.4th 355, 361-362; § 290.3, subd. (a)), they should instead be evaluated under the excessive fines clause of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution (*ibid*; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060, 1067-1070). Under this analysis, the court considers proportionality of the fine, with ability to pay as just one factor for consideration. (*United States v. Bajakajian* (1998) 524 U.S. 321, 337-338 [explaining the four factors to consider]; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 [same].)

(*Dennis*).) " ' "[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) We presume defense counsel rendered adequate assistance. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)

Defendant argues the outcome here would have likely been different had his attorney requested an ability-to-pay hearing and pointed out the burdens associated with prison work as a means of paying the fines, fees, and assessments. However, the trial court expressly considered defendant's ability to earn wages while incarcerated as a means to pay the amounts owed, commenting that based on the defendant's age and his ability to work in prison, he would be able to make payments. This suggests that even had defense counsel objected, it is not reasonably probable the court in this case would have reached a different conclusion. (See *Strickland*, *supra*, 466 U.S. at p. 694.) It also could explain why defendant did not argue there was additional evidence of inability to pay in his circumstances. Ultimately, the record does not reveal an explanation for defense counsel's failure to object to the arguments. Thus, the question is cognizable only on a habeas corpus, as part of a claim for ineffective assistance of counsel. (*Dennis*, *supra*, 17 Cal.4th at p. 521.)

## DISPOSITION

We reverse the conviction on count 4 and remand the matter for resentencing.  The trial court shall prepare an amended abstract of judgment reflecting the sentencing decisions.  In all other respects, the judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.

14